UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN LAVEN,

       Plaintiff,

v.                                         1:10-CV-01360 (NPM)

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____

APPEARANCES                                            OF COUNSEL

Office of Stephen J. Mastaitis, Jr.        Stephen J. Mastaitis, Jr., Esq.
Attorney for Plaintiff
1412 Route 9P
saratoga Springs, NY 12866

U. S. Social Security Administration      Benil Abraham, Esq.
Attorney for the Defendant
26 Federal Plaza
New York, NY 10019

NEAL P. McCURN, Senior U.S. District Court Judge

## MEMORANDUM - DECISION AND ORDER

      Plaintiff Karen Laven ("plaintiff") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), codified at 42 U.S.C. §§ 405(g), appealing a final decision of the Commissioner of Social Security ("defendant"), denying plaintiff's claim for Social Security benefits. For the reasons stated below, the

defendant's decision will be reversed and remanded.

I.      **Facts and Procedural History**

   A.   **Facts**

The following facts and procedural history are set forth in plaintiff's brief in support of plaintiff's complaint and motion for judgment on the pleadings (Doc. No. 10), and in the administrative transcript[1] (Doc. No. 8). The Defendant incorporates the testimony, evidence and procedural history into his own brief (Doc. No. 12) with one exception.[2]  Plaintiff's date of birth is August 7, 1962. She was 45 years old at the time of her application, and 40 years old at the time of her date last insured ("DLI") of December 31, 1992. She is a high school graduate (Tr. 112). Plaintiff worked as a deli clerk from 1984 to 1997 (Tr. 114). Plaintiff stopped work due to a hernia repair but while recovering, developed pains down her left leg. She was diagnosed with bursitis and told not to return to work by Dr. Richards, an orthopedic surgeon (Tr. 31). Plaintiff alleges disability secondary to lumbar degenerative disc disease, bulging discs, bone spurs, radiculopathy, complications of left inguinal hernia repair, gastroesophageal reflux disease ("GERD"), and arthritis (Tr. 113). Plaintiff alleges that she could no longer return

---

[1] Transcript of the record on review, hereafter "Tr."

[2] The Defendant corrects plaintiff's alleged onset day to July 21, 1999, instead of July 21, 2009 as set forth on page two of plaintiff's memorandum of law (Doc. No. 10).

to her work at the deli, which required eight hours standing, as well as repetitive bending and lifting up to 50 pounds. Plaintiff estimated that she could only stand for one hour at a time (Tr. 31-32, 114).

Plaintiff has been under the primary care of Dr. Theresa Viola ("Dr. Viola") since January 26, 1998 (Tr. 34, 118, 398). The plaintiff was also treated for several years by physical medicine, rehabilitation and electrodiagnosis specialist Dr. James Cole, M.D., Ph.D, and neurosurgeon Dr. Thomas Lovely, M.D. ("Dr. Lovely") (Tr. 45-47, 115, 119). Two months prior to her hearing, plaintiff began treatment for fibromyalgia with Dr. Wechsler, who reviewed blood work and prescribed medication (Tr. 34). Plaintiff was also told by her pain management physician, Dr. Edward Apicella ("Apicella") that she has had fibromyalgia since 2000 (Tr. 35).

Plaintiff has been physically examined on numerous occasions. She has undergone diagnostic testing including electromyography("EMGs"), CT scans, x-rays, echocardiogram and endoscopy and magnetic resonance imagining ("MRIs") (Tr. 115, 118, 123). Treatment had included cortisone and multiple lumbar epidural steroid injections ("ESI") (Tr. 162-67) as well as physical therapy (Tr. 153-61, 168-216), ultrasound, heat, a TENS unit, exercise, medication, right knee arthroscopy and partial medial menisectomy, performed on August 2, 2005 by Dr.

Eric R. Aronowitz, M.D., an orthopedic surgeon (Tr. 115-21, 123, 151-52).  When plaintiff stopped work in 1997, she had a three-year-old child and a five year-old child at home.  Her husband was self-employed, and she had assistance at home from her mother and her in-laws (Tr. 36).  Plaintiff testified that she needs assistance of all activities of daily living including housework, cooking, grocery shopping and laundry.  She testified that she has pain all of the time (Tr. 42-43).

     Dr. Viola, plaintiff's primary treating physician, completed interrogatories at the request of plaintiff's hearing attorney, former ODAR[3] Administrative Law Judge ("ALJ") John R. Stewart.  Dr. Viola verified treatment for diagnoses of status post-left inguinal hernia repair and residual inguinal neuritis and degenerative disc disease with radiculopathy (Tr. 217).  Dr. Viola stated that while under her care, plaintiff could neither return to her past relevant work nor perform the full range of sedentary work (Tr. 221). Dr. Viola's written record of treatment from December 7, 2006 thorough March 9, 2009 (Doc. No. 10, p. 4; Tr. 217-21, 223-34, 262-311, 397-99) provides a detailed clinical record of examinations, complaints, symptoms and findings.  Although Dr. Viola's records only document examinations from 2006,[4] these records confirm treatment that had been

---

    [3]    Office of Disability Adjudication and Review.  <u>See</u> www.socialsecurity.gov .

    [4]    Dr. Viola advised plaintiff's attorney that she does not have plaintiff's record of treatment from 1998 ( Doc. No. 10 at p. 3).

previously rendered by Dr. Viola.[5]  The records available from Dr. Viola confirm that plaintiff was taking, <u>inter</u> <u>alia</u>, hydrocodone for chronic pain (Tr. 272-73,277). A March 2007 note in Dr. Lovely's file documented, <u>inter</u> <u>alia</u>, that nerve blocks performed by Dr. Apicella had not improved plaintiff's condition and she was being scheduled for reevaluation by Dr. Lovely (Tr. 275).

### B. Procedural History

Plaintiff filed an application for Title II-SSDI benefits on June 30, 2008, alleging an onset date of July 21, 1999.  The application was denied initially and plaintiff filed a timely request for a hearing.  The hearing was held on October 13, 2009 in Albany, New York, before ALJ Robert Ringler.  In a notice of decision dated February 19, 2010, the ALJ denied the application (Doc. No. 10, p. 2). Plaintiff filed a timely request for Appeals Council review.  By letter dated September 17, 2010, the Appeals Council denied review of the ALJ's decision. The current action followed on November 9, 2010 (<u>Id.</u>).

During the hearing on October 13, 2009, the ALJ noted that plaintiff had filed a prior Social Security disability application.  Plaintiff's prior application was

---

[5]   A note in plaintiff's medical record dated December 7, 2006,  stating that a "six week followup for back, legs with burning mid-low back [pain with radiation down to the ] left leg/foot [with] swelling [of the ]lower extremity bilaterally, on Thanksgiving [increasing ] left groin pain ...." indicates to the court that this was indeed a follow-up visit (<u>Id.</u> at p. 10; Tr. 272).

filed on March 28, 1998. She was represented by Ira Mendleson, Esq., and had a hearing before ALJ Robert Wright, who denied the claim by a Notice of Decision dated July 20, 1999. Plaintiff's appeal was denied by the Appeals Council in a letter dated November 2, 2001. No further appeal was taken (Id.).

At the October 13, 2009 hearing, plaintiff testified that she did not appeal her earlier SSDI denial because she did not think she could get benefits. She did not understand that she could reapply, but finally did reapply because her condition was getting worse and she could not work ( Doc. No. 10 at p. 5). Plaintiff notes that the entire hearing transcript is only thirty pages, and those pages contain a considerable amount of discussion concerning what effect the plaintiff's prior application and denial should have on the current application (Id.). The ALJ ultimately found that plaintiff was unable to preform any past relevant work, but found that plaintiff retained the residual functional capacity for the full range of sedentary work through her DLI. The ALJ found her not disabled pursuant to Medical-Vocational Rule 201.27 (Id. at p. 6; Tr. 21).

**C.   Contentions**

Plaintiff now asks this court to decide whether the defendant's determination that plaintiff is not disabled is supported by substantial evidence and is free of legal error. Plaintiff asks whether (1) the ALJ's failure to solicit

records of treatment after November 2, 2001 is reversible error; (2) whether the ALJ's failure to credit the opinion of treating physician Theresa Viola, M.D. is reversible error; and (3) whether the decision that the plaintiff has a residual function capacity to perform the full range of sustained sedentary work activity prior to her DLI is supported by substantial evidence.

## II.   Discussion

### A.   Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted). See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler,

728 F.2d 582, 587 (2d Cir. 1984)).  When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

### B.  An ALJ has an obligation to develop the record

Plaintiff argues that the ALJ who presided over plaintiff's hearing had an obligation to develop the administrative record, citing Burgess v. Astrue, 537 F.3d 117 (2d Cir. 2008).  In Burgess, the Court of Appeals held that "because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  Citing 20 C.F.R. § 702.338, the court wrote that SSA regulations provide that an ALJ

> shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters. If the administrative law judge believes that there is relevant and material evidence available which has not been presented at the hearing, he may adjourn the hearing or, at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence. 20 C.F.R. § 702.338.

Burgess v. Astrue, 537 F.3d at 128.

In the case at bar, and as stated above at note 4, Dr. Viola, plaintiff's primary treating physician, advised plaintiff's attorney that she does not have

plaintiff's record of treatment from 1998 ( Doc. No. 10 at p. 3).  The first record available was the note from December 7, 2006, set forth above at note 5.  At the hearing, although the ALJ noted that plaintiff was under the care of Dr. Viola when the earlier decision was rendered in July of 1999, there is no mention of Dr. Viola's treatment nor evidence that her records were considered at the time of that decision.  Plaintiff argues that the ALJ stated that he was going to request the records, suggesting that only after he did so would a decision be rendered. (Tr. 48).  Defendant asserts that the ALJ stated he was going to request records from Dr. Lovely only, and in reviewing the transcript, the court ascertained that the defendant is correct on this point.  However, that does not relieve the ALJ from the requirement to develop the record.  Defendant argues that "[w]hile the evidence relating to the relevant period was extremely sparse, it represents the evidence that was available.  There was no need to recontact any of the plaintiff's physicians for further clarification of their opinions of plaintiff's condition." Doc. No. 12, p. 19.  Defendant also states that the ALJ properly determined that plaintiff was not entirely credible. Id. at p. 14.

     Social Security regulations "specifically require an ALJ to 'seek additional evidence or clarification from [the claimant's] medical source when the report from [that] medical source ... does not contain all the necessary information ....' 20

C.F.R. § 404.1512(e)(1)." Hilsdorf v. Commissioner of Social Security, 724 F.Supp.2d 330, 346 (E.D.N.Y. 2010). In the case at bar, plaintiff asserts that "the record contains a glaring gap of medical records of treatment by the primary care physician from 1997 through December, 2006." (Doc. No 10 at p. 7). The court questions how the ALJ could make his determination based on the sparse record before him. The determination of whether plaintiff was disabled at the date she was last insured is a pivotal, crucial issue. Plaintiff asserts, and the court concurs, that there is nothing in the pre-hearing or post-hearing development that suggests that the ALJ sought any medical records from Dr. Viola or from any other treating source for any period of time between 1999 and the first record of follow-up treatment on December 7, 2006. The court finds that the ALJ based his decision on an incomplete record. Accordingly, the court finds reversible error in that the ALJ did not seek the additional records needed to allow him to make an informed decision about plaintiff's disability. The case is remanded on this issue.

    **C.**    **The Treating Physician's Rule**

Plaintiff's next challenge to the ALJ's decision is that the ALJ did not give adequate consideration to the medical evidence provided by her treating physician,

Dr. Viola.  According to the "treating physician's rule,"[6] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 2003 WL 21545097 at *6 (2d Cir.2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

"Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it 'extra weight' under certain circumstances." Comstock v. Astrue, 2009 WL 116975 at * 4 (N.D.N.Y. 2009).

> Under C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.

Comstock, 2009 WL 116975 at *4.

In the instant case, the ALJ did not give controlling weight to the opinion of

---

[6] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, 2003 WL 21511160, at *9 (S.D.N.Y. 2003).

the primary treating physician, Dr. Viola.  In fact, he gave Dr. Viola's opinion negligible weight, while relying heavily on the opinion of Dr. Lovely.   The court finds no indication that the ALJ, prior to making his determination, addressed the criteria set forth above to determine how much weight to give Dr. Viola's evaluation of the plaintiff.  Instead, the ALJ spent a great deal of time attempting to discredit Dr. Viola's opinion that plaintiff has been "unable to perform the full range of sedentary work" since July 1999, stating that Dr. Viola's opinion was conclusory.  "[W]hile Dr. Viola is an expert in medicine, she is not an expert in the social security laws and rules, and her conclusory, and ambiguous statement that the claimant cannot perform the 'full range of sedentary work,' can only be afforded minuscule, if any weight." (Doc. No. 8-2 at p. 19).  The ALJ made much of the fact that while Dr. Viola signed a document prepared by plaintiff's council for her signature,  Dr. Lovely declined to sign, citing an "unwillingness to opine that plaintiff had a less than sedentary residual function capacity at any time since the alleged onset date." Id. at p. 20.  However, the ALJ gives no indication that the information provided on the document was false, or contrary to the evidence.  The ALJ wrote that "I find that Dr. Viola's obvious willingness to adopt a verbatim assessment of the claimant's physical limitations from counsel detracts from her overall credibility.  I also find that Dr. Lovely's unwillingness to adopt counsel's

physical assessment further detracts from Dr. Viola's credibility, inasmuch as Dr. Lovely is a specialist, who appears to have a longstanding treatment relationship with the claimant (see Exhibit 25F at 2 (rejecting counsel's invitation to provide an opinion regarding sedentary work, and, instead, **opting to send claimant for a functional capacity evaluation**))." (Id. at p. 20 (emphasis added)).   What the ALJ fails to consider was the result of the functional capacity evaluation ordered by Dr. Lovely, submitted to the ALJ by plaintiff's hearing attorney and received by the Social Security Administration, Albany, New York on November 20, 2009. In his letter to Dr. Viola dated November 6, 2009, and copied via facsimile machine to plaintiff's hearing attorney, Dr. Lovely writes, "Since last seen, [plaintiff] has also gotten a functional capacity evaluation, which rated her as capable of **less than** sedentary/sedentary work.  I spoke to the physical therapy, which said she does meet the criteria for Social Security Disability." (Doc. No. 8-8 at p. 85; Tr. 489 (emphasis added)).  In his decision dated February 19, 2010, the ALJ fails to address the functional capacity evaluation of which Dr. Lovely wrote, and instead reiterated Dr. Lovely's unwillingness to opine that plaintiff had a less than sedentary functional capacity.  The ALJ states, "[i]n sum, based upon the entire record, I find that, at all relevant times, the claimant has had a sedentary residual functional capacity." (Tr. 20).  The court finds error, and remands the case

on this basis as well.

### D.     Residual Functional Capacity Assessment

Plaintiff asserts that the ALJ's RFC assessment, finding that plaintiff "retains the residual functional capacity to perform sedentary work" (Tr. 19) is not supported by substantial evidence in the record.  RFC is defined in the regulations as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continued basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule."  RFC is the most an individual can do despite his or her limitations or restrictions. SSR 96-8p (West 2011).  The RFC assessment must be based on all of the relevant evidence in the case record, as set forth in 20 CFR § 404.1545, entitled "Your residual functional capacity."  Because the court has found that the ALJ failed to properly develop the record as he was required to do, and in combination thereof, failed to credit the opinion of treating physician Dr. Viola based on, <u>inter alia</u>, an incomplete record, the court finds that the ALJ's decision that plaintiff's RFC to perform the full range of sustained sedentary work is not supported by substantial evidence.  The court trusts that the Defendant will properly determine this issue on remand, based on a complete medical record.

### III. Conclusion

For the reasons set forth <u>supra</u>, the Defendant's decision is hereby REVERSED and REMANDED for further consideration consistent with this opinion. The Defendant's motion for judgment on the pleadings is DENIED. The Clerk is instructed to close this case.

**SO ORDERED.**

December 15, 2011.

_____
Neal P. McCurn
Senior U.S. District Judge